PALMER, APPELLEE, *v.* HOLTHAUS, D. B. A. JIM'S FRIENDLY
TAVERN, APPELLANT.

[Cite as Palmer v. Holthaus, 20 Ohio App. 2d 78.]

(No. 10803—Decided June 9, 1969.)

*Mr. Richard D. Haney,* for appellee.
*Messrs. Lindhorst & Dreidame* and *Mr. Charles D. Heile,* for appellant.

SHANNON, P. J. This is an appeal on questions of law from the Hamilton County Municipal Court wherein judgment was rendered against the defendant in a suit for personal injuries.

Plaintiff-appellee was a patron in a tavern operated by defendant-appellant, and on the evening in question admits to having been "fairly" intoxicated. While plaintiff was standing in the rear of the barroom, a scuffle between two other patrons occurred in the front and plaintiff moved toward it. His course of movement was across an area where linoleum was in process of being installed and, because the job was incomplete, there was a difference in

elevation of the floor which plaintiff stated was "about three-eighths inches." Plaintiff was aware of the uneven floor, a condition which had existed for several months.

Plaintiff sustained injuries to his left hand when it went through the glass top of a pinball machine. In his petition, he claimed that he fell through the glass as the result of tripping over the linoleum and being pushed by one of the persons involved in the altercation.

The case was tried without intervention of a jury and the findings of fact and conclusions of law filed by the trial judge assert that plaintiff's injuries were suffered as a result of both tripping and being pushed; that "the defendant knew of the abusive conduct of one of the participants of said fight during the earlier course of the evening"; that "there was a duty owing from the defendant to the plaintiff and other patrons of the tavern to use reasonable means to prevent the altercation which ensued and to see that the said tavern was a safe place for patrons, and that as a result of defendant's violation of such duty" plaintiff suffered his injuries.

The essential issue raised by this appeal is whether the judgment below is supported by the evidence.

There are certain principles so well established in the law that to restate them here for any purpose other than to bring the problem before us into sharper focus would be redundant.

Negligence is the unintentional failure to perform a duty owing to another, whereby injury or damage proximately results to another. However, not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone, so that where no legal rights are infringed there can be no remedy in damages. 39 Ohio Jurisprudence 2d 486, Negligence, Section 4, and cases there cited.

Actionable negligence requires that, in order to recover, there should be allegation and proof of a legal duty owing by the defendant, and of a breach of that duty, and where no legal duty has been defined no finding is warranted that there has been such failure to discharge a duty

as would justify an award of damages for negligence. 39 Ohio Jurisprudence 2d 497, Negligence, Section 12.

Contributory negligence is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care as, concurring or co-operating with the negligent act of the defendant, is a proximate cause of the injury complained of. 39 Ohio Jurisprudence 2d 624, Negligence, Section 85.

Where an injured party knowingly and deliberately assumes the risk that leads him into immediate danger, he relieves the one who creates the hazard of legal responsibility for an injury resulting from such exposure. 39 Ohio Jurisprudence 2d 615 *et seq.*, Negligence, Section 80.

Plaintiff claims that defendant was guilty of the breach of two legal duties, and as a result of either or both he suffered injury.

The first duty owing, as alleged by plaintiff, was to maintain the tavern floor in such condition that the premises could be used by a customer with reasonable safety.

It is undisputed that the floor was uneven. However, plaintiff was fully aware of the condition, as shown by his testimony upon *direct* examination:

"Q. What rug did you trip over? Tell us about that. A. It's not a rug. It's wall to wall linoleum. That Jim Holthaus was putting down, and he stopped it right there at the edge of the pinball machines, and he never had a chance to continue it, before that week-end.

"Q. What do you mean, he didn't have a chance to continue it? What—Was there linoleum ending in the bar floor? Is that what you're saying? A. Right.

"Q. Was this linoleum flat on the floor? Was it sticking up? What was its condition? A. It was about three-eighths inches high. Just enough to catch onto, or cause a —anybody to stumble over it or anything.

"Q. Do you know how long that linoleum had been that way? A. Yes. It was there quite a while.

"Q. When you say 'quite a while' is that a period of days or weeks? A. Weeks."

The second duty upon which plaintiff rests his claim

is that of the defendant to operate his business so that a customer could frequent the tavern without being assaulted by other patrons.

Here, plaintiff must, of course, prove that his injury was the natural and probable consequence of defendant's failure to use ordinary care to protect him after defendant knew or should have known of a dangerous propensity of any of the patrons in the tavern prior to the time of plaintiff's injury.

Perusal of the record convinces us that the affray occured suddenly, without warning and was of such short duration that it was over before defendant could get from behind the bar to quell it.

The equivocal state of plaintiff's case is pointed up by his own testimony upon direct examination:

"Q. So what occurred? A. A fight.

"Q. Well, what happened? A. Well, before the fight started, I was standing there with Della, and this fellow— and I went to turn to go to the front of the bar, why, I don't know.

"Q. You didn't have any particular purpose? A. Never had no purpose whatsoever. And, somebody said something to me right there, and I turned around, back towards the juke box, and then when I spun around again to go towards the front, I stumbled on the rug. They was four, five people standing, like in the aisle; so when I went through there, I stumbled, somebody was hit, and come down on the floor and the whole crowd backed up and then, all of a sudden somebody shoved me, and I just spun around right through the glass.

"Q. What glass? A. The pinball machine.

"Q. As a result of somebody shoving you? A. Right."

Again, the speculative quality of the plaintiff's claim for relief is demonstrated in the testimony of his female companion who witnessed the events and stated on direct examination:

"Q. What happened in the fight? How did the fight start, if you know? A. I don't know how the fight started. We was just standing there and then Charlie started—the

guy was already hit, and everything, and he started to walk across the front, and then, that's when someone hit him, you know, pushed him or something, I really don't know. And I don't know who it was."

Later, the same witness said:

"Q. What happened to Charlie? Tell us exactly what you saw him do, if anything, or what happened to him? A. Well, like I said, he just walked across, he was walking toward the front, and then when—that's when the fight was started, and then, someone pushed him, shoved him, and he fell into the pinball machine."

Consequently, if plaintiff relies upon the unevenness of the floor to recover, and if we assume that such amounts to a substantial defect, his claim is defeated by his own knowledge of the condition and his own conduct in walking over the surface voluntarily. Whether such acts constitute contributory negligence or assumption of the risk is immaterial for purposes here.

If plaintiff relies upon the claim of defendant's failure to protect him against acts of third parties, he fails on the strength of the law as pronounced in *Cunningham* v. *Marable*, 48 Ohio Law Abs. 614 (paragraph three of the headnotes in particular) as applied to the facts here:

"3. A possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons if the possessor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be done, and (b) protected the members of the public by controlling the conduct of the third persons, or giving a warning adequate to enable them to avoid the harm.

"4. A hotel keeper is not an insurer of the safety of his guests, and there is no absolute liability in case of injury to his guests, for he is liable only when negligent and when he has failed to exercise reasonable care."

It is also to be noted that the record discloses that

plaintiff walked toward the affray, although he could not, on trial, "recall" his reason therefor.

We conclude that there is no substantial evidence to sustain plaintiff's claim on either of its branches; that defendant's motion for dismissal at the close of plaintiff's evidence should have been granted; and that failure so to do constituted error by the trial court.

Consequently, the judgment below is reversed and final judgment for defendant is rendered.

*Judgment reversed.*

HILDEBRANT and HESS, JJ., concur.