TOME ET AL., APPELLANTS, *v.* BEREA PEWTER MUG, INC., APPELLEE.

(No. 44100—Decided June 17, 1982.)

Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L.P.A., Mr. Andrew P. Krembs and Mr. Richard S. Alkire, for appellants.

Messrs. Petro & Troia, Mr. Robert C. McClelland, Messrs. Kehn & Largent and Mr. Jeffrey W. Largent, for appellee.

JACKSON, J. Appellants, Michael Tome and Phillip (Danny) White, instituted this suit for damages against appellee Berea Pewter Mug, Inc., the owner and operator of a tavern located in Berea, Ohio. The appellee filed a motion for summary judgment on the ground that both Tome and White were guilty of contributory negligence and assumption of the risk. The trial court entered judgment for the appellee without issuing an opinion. On appeal, appellants Tome and White contend that there remain genuine issues of fact for trial, and that appellee is not entitled to judgment as a matter of law.

Summary judgment is properly rendered where, based upon the evidentiary material presented to the court, and construing such evidence most strongly in favor of the party against whom the motion is made, a reasonable person could only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).

The evidentiary material which was before the court in this case consisted of the depositions of Tome, White, and Gary Busler, and copies of an invoice showing the purchase of numerous drinks by an individual named "Bonnizzio" on September 22, 1978.

Tome and White went to the bar section of the Pewter Mug Restaurant on the afternoon of September 22, 1978, for the purpose of meeting Daniel Bonnizzio, to speak about employment. Busler accompanied them, and entered the bar approximately fifteen minutes after they did. Bonnizzio treated Tome, White, and Busler to drinks. Busler and White were twenty-one years old at this time, and Tome was only two and one-half months short of being twenty-one. Busler had one sip of a single drink; Tome and White each had several drinks, and Tome became intoxicated. Tome described himself as being "pretty drunk." White said that Tome's speech was loud and slurred, but that he was not stumbling. According to

Busler, Tome was obviously drunk for a good portion of the time that he was in the bar. Busler said that he had Tome's car keys, and that as Tome got drunk he created a disturbance because he could not find his keys. Upon leaving the bar, they argued about who would drive; Busler and White wanted Busler to drive because he was sober, but Tome insisted on driving his own car. Busler finally gave Tome the keys, and Tome drove them toward home.

Neither Tome nor Busler remembered how the accident had occurred. White testified that Tome started weaving and drove the car into a pole on the left-hand side of the road. It was a clear day, and there were no obstacles in the road which could have caused Tome to swerve.

Both White and Tome had some familiarity with alcohol. White had twice been convicted of disorderly conduct while intoxicated, and had two convictions for driving while under the influence of alcohol. Tome gave the following testimony about his drinking habits at pages 34-35 of his deposition:

"Q. When you say party a little bit, did you drink frequently?

"MR. KREMBS: Objection.

"THE WITNESS: Just once in a while.

"BY MR. PETRO:

"Q. What did you drink when you drank? What beverage?

"A. Beer.

"Q. Did you ever drink liquor?

"A. Maybe a little whiskey.

"Q. Did you ever drink shots and beer together prior to this day?

"MR. KREMBS: Or at any time?

"MR. PETRO: At any time?

"THE WITNESS: No.

"BY MR. PETRO:

"Q. So, prior to this occasion, you would either drink beer or you would drink —

"A. You are talking a beer and a shot at once? No, I never did. Maybe I would drink a little whiskey and drink a little beer, but not like a shot and a beer, no."

Appellants Tome and White propose several arguments in support of their contention that the court erred in granting summary judgment to appellee Berea Pewter Mug, Inc. These arguments, gleaned from their assignments of error set forth in their brief on appeal,[1] are as follows:

"I. The doctrine of comparative negligence should be applied in this case.

"II. The trial court erred in finding that Tome and White had either assumed the risk or were guilty of contributory negligence.

"III. The defense of contributory negligence is not available to defendants, because defendants were guilty of willful and wanton misconduct and because defendants negligently violated a statute designed to protect the class of persons to which Tome and White belonged."

Each of these propositions is separately discussed below.

I. Comparative Negligence

Appellants contend that the doctrine of comparative negligence is applicable to this case, for two reasons. First, they state that R.C. 2315.19[2] effective June 20,

---

[1] See Appendix for appellants' assignments of error.

[2] R.C. 2315.19 provides in relevant part:

"(A)(1) In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was no greater than the combined negligence of all other persons from whom recovery is sought. However, any damages recoverable by the person bringing the action shall be diminished by an amount that is proportionately equal to his percentage of negligence, which

1980, should be retroactively applied to causes which arose prior to its effective date. Second, they contend that this court of appeals adopted a comparative negligence standard in like cases in *Kemock* v. *The Mark II* (1978), 62 Ohio App. 2d 103 [16 O.O.3d 254].

Statutes affecting substantive rights are presumptively prospective in effect under Ohio law. R.C. 1.48. In *Balcerzak* v. *Page* (July 30, 1981), No. 42864, unreported, this court found that R.C. 2315.19 affects the substantive "duties, rights and obligations" of the parties (*Denicola* v. *Providence Hospital* [1979], 57 Ohio St. 2d 115, 117 [11 O.O.3d 290]), and that it may therefore not be given retroactive application. Accordingly, the applicability of the common law doctrine of contributory negligence to the facts of this case was not affected by the subsequent enactment of R.C. 2315.19.

This court's decision in *Kemock* v. *The Mark II, supra,* did not abrogate the rule of contributory negligence. In *Kemock,* plaintiff's decedent alleged that the defendant tavern had sold the decedent liquor even after he had become intoxicated. The decedent had a fatal automobile accident after leaving the tavern. This court upheld the trial court's entry of summary judgment in favor of the defendant tavern. It was specifically acknowledged that the principle of contributory negligence was applicable, and would bar recovery even if it were shown that the defendant tavern was negligent in serving the decedent after he had become intoxicated. 62 Ohio App. 2d, at 109-110, 117. Contributory negligence is not a defense, however, where the defendant is accused of willful and wanton misconduct. *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320 [27 O.O.2d 241], paragraph three of the syllabus.

In *Kemock* this court found the evidence sufficient to justify a finding that both the plaintiff and the defendant were guilty of willful and wanton misconduct as a matter of law. We further concluded that the misconduct of the plaintiff was greater, and denied recovery. 62 Ohio App. 2d, at 119-120. The defense of assumption of the risk was not considered in that opinion.

Since the cause of action in the case at bar arose prior to June 20, 1980, the common law doctrine of contributory negligence is fully applicable.

## II. Plaintiffs' Contributory Negligence and Assumption of the Risk

Contributory negligence and assumption of the risk were defined and distinguished by the Ohio Supreme court in *DeAmiches* v. *Popczun* (1973), 35 Ohio St. 2d 180 [64 O.O.2d 106], at page 186 in the opinion:

"As this writer views the difference between the two terms, 'assumption of the risk' is based upon the voluntary consent of the plaintiff to meet the risk and take her chances, while 'contributory negligence' is founded upon the failure of a plaintiff to exercise the care of a reasonable man for his own protection. Obviously, there are situations that satisfy both meanings, so that, although they may overlap they are neither inclusive nor exclusive. To the former it would be logical to apply the subjective test or standard, while the latter doctrine is usually tested by the objective method."

The Supreme Court has defined assumption of the risk as, "* * * consent to or acquiescence in * * * an appreciated or known * * * risk." *Wever* v. *Hicks* (1967), 11 Ohio St. 2d 230, 234 [40 O.O.2d 203].

The Ohio Supreme Court has also indicated that it is proper for a trial court to resolve the issue of assumption of the risk on a motion for summary judgment. *Benjamin* v. *Deffet Rentals* (1981), 66 Ohio St. 2d 86 [20 O.O.3d 71], syllabus.

---

percentage is determined pursuant to division (B) of this section. This section does not apply to actions described in section 4113.03 of the Revised Code."

The evidence before the trial court unequivocally demonstrates that Tome and White "consented to the known risk" of Tome driving. Tome insisted on driving; White rode with him, even though he knew Tome was drunk. Tome's negligence in driving while drunk also contributed to his injuries.

Appellants contend that their drunkenness made them incapable of knowingly assuming a risk of danger, and that Tome's age and inexperience with alcohol gave rise to a jury question on the issue of contributory negligence.

Though Tome was under age for the lawful consumption of liquor (R.C. 4301.22[A], 4301.63), he was no longer a "minor" under Ohio law. (See R.C. 3109.01, which sets eighteen years as the age of majority.) The evidence discloses that this young man had imbibed whiskey and beer before, and was therefore presumably aware of its effects. Despite his state of intoxication, and the requests of his friends, appellant Tome insisted on driving; without excuse or justification he lost control of his car and caused an accident. Even if this evidence is construed most strongly in behalf of Tome, a reasonable person could reach no other conclusion than that Tome's negligent conduct contributed to his injuries.

The Court of Appeals for Lucas County has addressed the issue of whether intoxication relieves a person from responsibility for his negligent acts. The court stated that intoxication is not a defense:

"Ordinarily, voluntary as well as involuntary intoxication is no defense in a criminal proceeding, and intoxication is no defense in a negligence action. If intoxication is not a defense to crime and does not excuse ordinary negligence, it should not relieve one from the consequences of a wrong greater than mere negligence — willful or wanton misconduct in heedless or reckless disregard of the safety of others. To hold otherwise puts a premium upon drunkenness. As aptly stated by the Supreme Court of Wisconsin, the driving of a car upon the highway by one intoxicated fully responds to all the elements necessary to constitute gross negligence, and the driving of a car by one in such condition betrays an absence of any care and indicates such recklessness and wantonness as evinces an utter disregard of consequences. *Tomasik* v. *Lanferman,* 206 Wis. 94, 238 N.W. 857. Cf. *Scott* v. *Gardner,* 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50. In other words, drunkenness does not relieve a person from exercising the degree of care of a sober man under the same circumstances. Ordinary care means that care which every prudent man would exercise under similar circumstances. In taking the conduct of a prudent man as a standard, reference is made to the normal man; that is, a sober man. Ordinary care is not measured by what every prudent drunken man would do under like circumstances, but what every prudent sober man would do under like circumstances. If ordinary care under certain circumstances would require a certain thing to be done or omitted to be done, the requirement is binding on a man, whether sober or drunk. *Powell* v. *Berry,* 145 Ga. 696, 89 S.E. 753, cited in *Cleveland Ry. Co.* v. *Owens, supra." Zalewki* v. *Yancey* (1956), 101 Ohio App. 501, 504-505 [1 O.O.2d 424].

Neither does the fact that a person is intoxicated render him incapable of knowingly exposing himself to danger. In *Sandberg* v. *Hoogensen* (1978), 201 Neb. 190, 266 N.W.2d 745, 5 A.L.R. 4th 1185, the Supreme Court of Nebraska noted that an intoxicated person is more likely to "assume the risk" than a sober person:

"The result of the blood test of the passenger was relevant to prove his intoxication. Intoxication would diminish his appreciation of danger and render him more likely to take greater risks than usual." *Id.* at 195, 5 A.L.R. 4th at 1190.

Moreover, in a decision of the Court of Appeals for Hamilton County an intoxicated patron of a bar was found to have assumed the risk and to have been con-

tributorily negligent when he voluntarily walked across an uneven floor with knowledge of its defective condition. *Palmer* v. *Holthaus* (1969), 20 Ohio App. 2d 78, 82 [49 O.O.2d 92].

Appellant Tome assumed the risk of injury by insisting on driving, over the protests of his companions. Appellant White, with his repeated arrests and convictions for disorderly conduct (intoxication) and DWI, cannot claim that he was ignorant of the risk of being a passenger in an automobile driven by an intoxicated person.

It is the considered opinion of this court that a person who is voluntarily intoxicated must be held to the same standard of care as a sober person, and may be found contributorily negligent. This court further holds that a person who knowingly exposes himself to danger is subject to the affirmative defense of assumption of the risk, even though that person's capacity to appreciate the risk is diminished because of voluntary intoxication.

Under the facts of this case, the trial court did not err in finding as a matter of law that Tome was contributorily negligent, and that both Tome and White had assumed the risk of injury.

### III. Defendant's Negligence *Per Se* and Willful and Wanton Misconduct

Appellants correctly note in their brief on appeal that contributory negligence is no defense when the defendant is alleged to have committed willful and wanton misconduct. *Kellerman* v. *J. S. Durig Co., supra.* In addition, in some cases of "negligence *per se*" (negligence which consists of the violation of a statute), contributory negligence is not recognized as a defense; contributory negligence may not be invoked where the purpose of the statute is to protect a class of persons who are unable to protect themselves. Restatement of Torts 2d 539, Section 483, Comment *c.* Appellants contend that for these reasons, the defense of

contributory negligence is inapplicable to the case at bar.

### A. Defendant's Negligence *Per Se*

Defendant violated three provisions of the Liquor Control Law (R.C. Chapter 4301) when it served appellant Tome on September 22, 1978. It violated the law by serving liquor to a twenty-year old man, by serving liquor to an intoxicated person, and by giving away a shot of beer or liquor. R.C. 4301.22(A), (B), and (E).

In the usual case, contributory negligence may be invoked even where the defendant is found to have committed "negligence *per se.*" In *Patton* v. *Pennsylvania Rd. Co.* (1939), 136 Ohio St. 159 [16 O.O. 114], the defendant railroad had operated its train in excess of the lawful speed limit, but the Supreme Court nevertheless found that it was entitled to interpose as a defense the plaintiff's contributory negligence:

"It must be conceded that since the train was traveling at a rate of speed in excess of 25 miles per hour, the maximum rate permitted by the ordinance, there was a violation of the speed ordinance, in force in the city of Bucyrus, and such violation constituted negligence *per se* on the part of the defendant company. When a positive, specific and affirmative duty is enjoined by statute or ordinance, the violation thereof is negligence *per se,* or negligence as a matter of law. Under such circumstances, the question whether the violator is guilty of negligence is not debatable. When the violation is conceded or established the court must charge, as a matter of law, that the violator is guilty of negligence * * * and if the jury finds that the violation was the proximate cause of the injury a case is made out against the defendant.

"However, the fact that the defendant is chargeable with negligence *per se* or as a matter of law, does not preclude a defense of contributory negligence on the part of the plaintiff, and if negligence on the part of the plaintiff is established and

shown to be a proximate cause of the injury of which he complains, he cannot recover. * * *" 136 Ohio St. at 166 (citations omitted).

Section 483 of the Restatement of Torts 2d offers a guideline for determining whether the defense of contributory negligence is available to a party charged with negligence *per se*. It provides:

"The plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant." *Id.* at 538.

We are not persuaded that the state of Ohio intended, through enactment of R.C. 4301.22 of the Liquor Control Law, to place upon tavernkeepers "the entire responsibility for such harm as has occurred." After all, appellant Tome was also guilty of negligence *per se*; it is unlawful for persons under the age of twenty-one to order, purchase or consume liquor. R.C. 4301.63, 4301.632. It is also unlawful for intoxicated persons to drive. R.C. 4511.19. This court, in *Kemock* v. *The Mark II, supra,* expressly held that a tavernkeeper accused of negligence in serving a patron may assert as a defense the patron's contributory negligence. We decline to overrule that decision.

There is a statute which appears designed to protect a specific and narrowly defined class of persons from the effects of alcohol. This statute is commonly known as the "Dram Shop Act," R.C. Chapter 4399. The core provision of this statute states:

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined by section 4301.01 of the Revised Code to such person, has a right of action in his own name, severally or jointly, against any person selling or giving intoxicating liquors which cause such intoxication, in whole or in part, of such person." R.C. 4399.01.

It is certainly arguable that the legislature intended to make tavernkeepers liable for damages proximately caused by the serving of liquor to persons on the "blacklist" maintained by the Department of Liquor Control, regardless of the fault of the plaintiff. It does not appear that the legislature intended this result for sale of liquor to every intoxicated person.

B. Defendant's Willful and Wanton Misconduct

Though the defendant's alleged willful and wanton misconduct may deprive it of the defense of contributory negligence (see *Kellerman* v. *J. S. Durig Co., supra*), such behavior does not preclude the defense of assumption of the risk. *Wever* v. *Hicks, supra.* The Supreme Court held, in the first paragraph of the syllabus of its opinion in *Wever,* as follows:

"The defense of assumption of the risk is available to a defendant where a plaintiff consents to or acquiesces in an appreciated, known or obvious risk to the safety of the plaintiff, even where wilful and wanton misconduct on the part of the defendant may be proved."

Thus, even assuming that the conduct of the defendant-tavernkeeper is construed as willful and wanton, as was found in *Kemock* v. *The Mark II, supra,* the defendant is not liable for damages in the case at bar because as a matter of law both Tome and White assumed the risk of injury when they drove away in an intoxicated state.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, J., concurs.

MARKUS, P.J., concurs in judgment only.

Appendix

Appellants' assignments of error are as follows:

"Assignment of Error No. One

"The trial court erred in granting appellee's motion for summary judgment since there is a genuine issue of material fact with respect to appellant Michael Tome's alleged contributory negligence.

"Assignment of Error No. Two

"The trial court erred in granting appellee's motion for summary judgment since even if Michael Tome was negligent per se, this defense is insufficient to bar appellants' claim as a matter of law.

"Assignment of Error No. Three

"The trial court erred in granting appellee's motion for summary judgment since there is a genuine issue of material fact with respect to appellant Michael Tome's alleged assumption of the risk.

"Assignment of Error No. Four

"The trial court erred in granting appellee's motion for summary judgment since there is a genuine issue of material fact with respect to appellant Phillip D. White's alleged assumption of the risk.

"Assignment of Error No. Five

"The trial court erred in granting appellee's motion for summary judgment since appellants have raised a justiciable and cognizable claim for relief.

"Assignment of Error No. Six

"The trial court erred in granting appellee's motion for summary judgment since there are numerous genuine issues of material fact and appellee is not entitled to judgment as a matter of law."