OPINION
Plaintiff-appellant, Adama Boye, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Hy-Tek Material Handling, Inc. ("Hy-Tek").
On June 8, 1997, plaintiff, a warehouse employee of Consolidated Stores Corporation ("Consolidated"), was operating a lift truck in the course of his employment when his left foot became caught between the lift truck and a pillar. According to plaintiff, the incident resulted in serious injury to plaintiff's foot that required several surgeries and continuing treatment for pain. Following the incident, Consolidated, described as a self-insuring employer, paid benefits to plaintiff.
On June 2, 1999, plaintiff filed a lawsuit against, among others, Consolidated, NACCO Materials Handling Group, Inc. ("NACCO"), the manufacturer of the lift truck plaintiff used at the time of his injury, and Hy-Tek , the distributor of the lift truck. Plaintiff demanded compensatory damages in excess of twenty-five thousand dollars and a determination of the amount of money to which Consolidated was subrogated from the other defendants.
On February 5, 2001, Hy-Tek filed a motion for summary judgment that the trial court granted. The remaining claims against Consolidated and NACCO were dismissed after the parties settled them. Plaintiff timely appeals, and assigns a single error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT-APPELLANT [sic] HY-TEK MATERIALS HANDLING, INC.
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421, 429. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, supra, at 293; Vahila, supra, at 429-430; Civ.R. 56(E). See, also, Castrataro v. Urban (Mar. 7, 2000), Franklin App. No. 99AP-219, unreported.
Although plaintiff's complaint asserted five counts, our analysis is confined to plaintiff's fourth count because plaintiff's memorandum contra Hy-Tek's summary judgment motion admitted plaintiff's specific claim against Hy-Tek, a common law negligence claim, was contained in it. Specifically, plaintiff alleged Hy-Tek had (1) a duty to inspect Consolidated's premises prior to the sale of the lift truck and provide a lift truck that incorporated a design eliminating or minimizing a risk of operator injury in Consolidated's operations, and (2) a duty to train and instruct plaintiff in the safe use and operation of the lift truck.
In granting Hy-Tek's motion for summary judgment, the trial court did not directly consider plaintiff's common law negligence claim. Instead, it granted Hy-Tek's motion for summary judgment after finding no liability under R.C. 2307.78, a section under Ohio's Product Liability Act that pertains to a supplier's liability.
Preliminarily, we note that in 1996 Am.Sub.H.B. No. 350 ("S.B. 350") amended R.C. 2307.78 effective January 27, 1997. However, in State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, paragraph three of the syllabus, reconsideration denied, 87 Ohio St.3d 1409, S.B. 350 was found unconstitutional in toto. Therefore, our analysis will be confined to pre-S.B. 350 product liability law applicable at the time of plaintiff's injury.
Former R.C. 2307.78 pertains to a supplier's liability under Ohio's Products Liability Act, codified at R.C. 2307.71 et seq. See Jackson v. Alert Fire and Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 51, fn. 4. Here, in a civil action plaintiff seeks compensatory damages from Hy-Tek for a physical injury from a product that Hy-Tek sold, but did not manufacture. Accordingly, the Ohio Products Liability Act applies to this case. See former R.C. 2307.71(M) and (O). The trial court thus properly examined former R.C. 2307.78 to assess Hy-Tek's supplier liability under plaintiff's complaint. Former R.C. 2307.78(A)(2) is not applicable because Hy-Tek made no representations to which the lift truck failed to conform; former R.C. 2307.78(B) is not applicable because none of the eight elements under section (B) have been met. Accordingly, under former R.C. 2307.78(A)(1), the issue resolves to whether Hy-Tek was negligent and whether that alleged negligence was a proximate clause of plaintiff's injury.
To establish negligence, "[i]t is rudimentary that * * * one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. * * * The existence of a duty depends on the foreseeability of the injury. * * * The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. * * * The foreseeability of harm usually depends on the defendant's knowledge." Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. (Citations omitted.)
"The existence of a duty in a negligence action is a question of law for the court to determine." Mussivand v. David (1989), 45 Ohio St.3d 314,318. See, also, Peyer v. Ohio Water Serv. Co. (1998), 130 Ohio App.3d 426,433. "There is no formula for ascertaining whether a duty exists. Duty '* * * is the court's expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' * * * Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." Mussivand, supra, at 318. (Citations omitted.)
Here, plaintiff alleges Hy-Tek acted negligently because Hy-Tek knew that (1) other operators of the type of lift truck in question had suffered injuries in collisions with stationary objects if the operators had a body part outside the lift truck, (2) Hy-Tek knew that the lift truck's manufacturer designed a safety feature to minimize or prevent operator injury in such situations, (3) Hy-Tek knew the safety feature was designed for Consolidated's type of operation, and (4) Hy-Tek failed to provide the lift trucks with the safety feature.
In support of its allegation that Hy-Tek had knowledge of other operators who were similarly injured, plaintiff relies on the deposition testimony of James Eadie, who was the products assurance manager for the manufacturer NACCO until approximately the mid-1990s. According to Eadie, NACCO was aware of the possibility of operator injury under the circumstances at issue and developed a door to assist with operator protection. Moreover, according to Eadie, information about the door's purpose was communicated to NACCO's marketing and applications personnel, who were supposed to pass along the information to persons who planned to buy a fleet of lift trucks. Plaintiff, however, provided no evidence that NACCO representatives in fact communicated the information about the door and its purpose to the lift buyers, much less Hy-Tek.
Plaintiff next relies on a document entitled "Human Factors Analysis of Material Handling Equipment," published in January 1978 under the auspices of the National Institutes for Occupational Safety and Health and prepared by the Bureau of Research Statistics, Risk Management Section, Wisconsin Department of Industry, Labor, and Human Relations. An excerpt from page forty-one of this document was read into Eadie's deposition and stated: "By contrast it was found that accidents in which someone was pinned between the truck and a stationary object were proportionally much more frequent for stand-up rider trucks and walkies than for sit down rider trucks, as were accidents in which the operator was struck by the truck he was maneuvering." (Eadie depo.,125-126.) With that information, plaintiff contends Hy-Tek should have foreseen plaintiff's injury.
Even though that information was in the public domain, plaintiff fails to demonstrate that anyone at Hy-Tek knew of the document. Moreover, although the information in the document would be considered in designing a lift truck (see Eadie depo., 126), Hy-Tek was not involved in the design of the lift truck at issue. Accordingly, the existence of the published document does not support plaintiff's contention that Hy-Tek knew that such accidents were proportionally more frequent for stand-up rider trucks than for other types of trucks, and therefore, that such an injury was foreseeable at Consolidated's warehouse.
Construing the evidence in his favor, plaintiff, at best, can demonstrate only that (1) prior to its bid, Hy-Tek toured Consolidated's warehouse on an application survey and had knowledge about the operational environment of Consolidated's warehouse, and (2) Hy-Tek had knowledge that a steel door was a special option, as demonstrated by the brochure that Hy-Tek included with its bid to Consolidated. Because plaintiff failed to show Hy-Tek knew of any alleged safety problem with the lift truck, Hy-Tek had no duty to plaintiff. Brown v. McDonald's Corp. (1995), 101 Ohio App.3d 294 (in absence of evidence seller knew or had reason to know of the possibility of harm to purchaser, supplier had no duty to inquire of customers beyond facts already available to supplier); see, also, Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 325 ("In Ohio, the case law has established that a * * * vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect").
In the final analysis, Consolidated solicited competitive bids for lift trucks. Hy-Tek submitted a proposal that included a brochure with information about an optional door. A Consolidated employee who was responsible for ordering lift trucks admitted he did not read the brochure. Consolidated ordered the lift truck, specifying all the features it wanted on the requested trucks. Hy-Tek supplied a lift truck with the specified features. Hy-Tek was not responsible for Consolidated not reading the brochure, or its not ordering the optional door. Hy-Tek was not required to force Consolidated to purchase a feature it otherwise had not chosen.
Plaintiff also claims Hy-Tek failed to properly train plaintiff in the safe use and operation of the lift truck. Consolidated, not plaintiff, contracted with Hy-Tek to purchase the stand-up rider lift truck. While Consolidated's current packet for requesting quotations specifically asks a supplier to be responsible for training Consolidated's personnel in the operation and maintenance of the purchased equipment, including driver training, the Hy-Tek proposal Consolidated accepted included only a maintenance agreement concerning the equipment; no agreement for personnel training in the safe operation of the lift truck in question was included. Accordingly, plaintiff proffered no evidence that Hy-Tek had a contractual obligation to train Consolidated's employees.
As a result, plaintiff's claim that Hy-Tek failed to properly train plaintiff predicates liability on a theory of nonfeasance. Yet, even in a case of nonfeasance, the existence of a legal duty is critical, and unless a duty is established, a defendant's failure to act does not create liability. Clemets v. Heston (1985), 20 Ohio App.3d 132, 135. Plaintiff's injury does not in itself give rise to an actionable claim. See Palmer v. Holthaus (1969), 20 Ohio App.2d 78, 79 ("[N]ot every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone, so that where no legal rights are infringed there can be no remedy in damages. * * * Actionable negligence requires that, in order to recover, there should be allegation and proof of a legal duty owing by the defendant, and of a breach of that duty, and where no legal duty has been defined no finding is warranted that there has been such failure to discharge a duty"). (Citations omitted.) See, also, Jewell v. City of Columbus (1984), 20 Ohio App.3d 168,170.
"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja v. Irving (1958), 49 Cal.2d 647, 650, 320 P.2d 16, 19.
Even if we assume, without deciding, that Hy-Tek, as a supplier, may under some circumstances have a duty to provide training regarding the trucks it supplies, here Hy-Tek's failure to train plaintiff is remotely connected, at best, to plaintiff's injury: Hy-Tek sold the lift truck to Consolidated in approximately 1994 and plaintiff did not begin working at Consolidated until 1997. To find that, as a legal duty, Hy-Tek should have provided training to plaintiff, who was not in Consolidated's employment at the time the lift truck was supplied to Consolidated, is unreasonable, as Hy-Tek could not have foreseen injury to plaintiff at the time it sold the lift truck to Consolidated. Moreover, plaintiff's evidence fails to show Hy-Tek's providing training at the time it delivered the lift truck would have affected plaintiff's method of operating it at the time plaintiff was injured. Accordingly, notwithstanding plaintiff's claim that Hy-Tek had a duty to train plaintiff in the safe use and operation of the lift truck, plaintiff's evidence does not support the existence of such a duty.
Because plaintiff failed to establish Hy-Tek's negligence pursuant to former R.C. 2307.78, it likewise failed to establish negligence under a common law theory of negligence. Accordingly, we overrule plaintiff's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
TYACK, P.J., and PETREE, J., concur.